# SACCO & FILLAS LLP

31-19 Newtown Ave., 7th Floor                                    Ph: 718-269-2207
Astoria, New York 11102                                    OAlvarado@SaccoFillas.com

February 18, 2025

**VIA ECF**
Hon. Robyn F. Tarnofsky
Daniel Patrick Moynihan
United States Courthouse
Courtroom: 9B
500 Pearl Street,
New York, New York 10007

       Re:       *Lander, et al. v. Amigos Hospitality LLC, et al.*
       Case No.   24-cv-00287

Dear Judge Tarnofsky,

    This office represents Plaintiffs Emily Lander, Sabrina Rojas, Mahbub Hussain, Jubar Ahmed, Noimulla Khaled, and Hasan Uddin. We respectfully submit the instant request that the Court approve this settlement between Plaintiffs and Defendants Amigos Hospitality LLC, Amigos Hospitality Group 1 LLC, Amigos Hospitality Group 2 LLC, Antonio Turbay, Alan Dahdah Sayegh, and Ciro Sampietro Ricci in this wage and hour case.

## 1.  Exhibits

    Ex. A – Settlement Agreement;
    Ex. B – Damages Calculation based on Complaint; and,
    Ex. C – Attorney's bill for fees and costs.

## 2.  Procedural History

    This case was originally filed by Plaintiffs on January 12, 2024, asserting claims against Defendants to recover unpaid minimum wages, tip misappropriation and retaliation pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), as well as under the New York Labor Law § 190, et seq. ("NYLL"), in addition to claims for violations of the New York Wage Theft Protection Act (WTPA) under NYLL § 195. Plaintiffs also sought liquidated damages, statutory damages, interest, and attorneys' fees and costs under the FLSA and NYLL. Defendants filed their Answer and Affirmative Defenses to the Complaint, denying all of Plaintiffs' claims.

## 3.  Factual Allegations

    This is a wage and hour action. Plaintiffs are tipped workers as follows:

- Emily Lander – waitress who worked for defendants from January to June 2023
- Sabrina Rojas – waitress who worked for defendants from January to June 2023
- Jubar Ahmed – busser who worked for defendants from November 2023 to February 14, 2024
- Noimulla Khaled – busser who worked for defendants from December 1, 2022 to December 14, 2023

- Mahbub Hussain – busser who worked for defendants from December 31, 2022 to December 14, 2023
- Hasan Uddin – busser who worked for defendants from April 14 to November 14, 2023.

Defendants are the owners and operators of nightclubs in New York and Florida: Amigos Hospitality LLC, Amigos Hospitality Group 1 LLC, Amigos Hospitality Group 2 LLC, Antonio Turbay, Alan Dahdah Sayegh, Ciro Sampietro Ricci, and Hector Claveria.

Plaintiffs claimed that Defendants failed to provide tip credit notices under the FLSA and NYLL. In violation of the minimum wage rules, Defendants paid Plaintiffs only $10 per hour. Defendants unlawfully withheld approximately five percent (5%) of Plaintiffs' tips. Defendants failed to provide lawful wage notices and statements as required under NYLL § 195. Additionally, Plaintiffs Sabrina Rojas and Emily Lander alleged that when they complained to Defendants regarding Defendants' illegal tip misappropriation, Defendants fired them, in violation of the anti-retaliation provisions in the FLSA and NYLL. The damages calculation, attached as exhibit B, lists all alleged damages.

Defendants deny the allegations and contend that they have limited ability to pay a judgment in this action. The parties acknowledge that they face risks of not prevailing on some or all their claims or defenses if this case were to proceed to trial and acknowledge challenges in collecting a full judgment.

## 4. Settlement Agreement

The Settlement Agreement, attached hereto as Exhibit A, requires Defendants to pay Seventy Thousand Dollars and Zero Cents ($70,000.00) ("Settlement Sum") to resolve the case, but without any admission of liability. After attorneys' fees and expenses, Plaintiffs will receive Forty-four thousand three hundred forty dollars and sixty-six cents ($44,340.66) of the total Settlement Sum. Plaintiffs' counsel will receive Twenty-three thousand three hundred thirty-three dollars and thirty-three cents ($23,333.33) (one-third of the settlement amount) plus two thousand three hundred twenty-six dollars and one cent ($2,326.01) for reimbursement of costs, totaling twenty-five thousand six hundred fifty-nine dollars and thirty-four cents ($25,659.34).

Pursuant to the Settlement Agreement, Defendants will pay the Settlement Sum in two (2) monthly installments totaling thirty-four thousand nine hundred ninety-nine dollars and ninety-six cents ($34,999.96) each. In the event of default, Defendants are jointly and severally liable for the full Settlement Sum which shall become immediately due plus an amount in liquidated damages which were waived in settlement. Ex. A. Defendants also agreed to submit to this Court's jurisdiction for the purpose of enforcing the Settlement Agreement if they default.

The Agreement in this case contains a release by Plaintiffs of wage-related claims under the FLSA, the NYLL and WTPA. *See* Exhibit A ¶8.

5.  **The Court Should Approve the Settlement of Plaintiffs' FLSA Claims as Fair and Reasonable and Dismiss the Action with Prejudice**

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), provides that stipulated dismissals settling FLSA claims with prejudice require the approval of a United States District Court or the Department of Labor. *Id.* "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." *Martinez v. Hilton Hotels Corp.,* No. 10 Civ. 7688 (JLC), 2013 WL 4427917, at *2 (S.D.N.Y. Aug. 20, 2013) (*quoting Garcia v. Bae Cleaners Inc.,* No. 10 Civ. 7804 (KBF), 2012 WL 1267844, at *1 (S.D.N.Y. Apr. 12, 2012)). Courts in the Second Circuit consider the totality of the circumstances, including the following factors, when determining whether a proposed settlement is fair and reasonable:

> "(1) the Plaintiffs' range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion." Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotations omitted).

As set forth more fully below, the Parties respectfully submit that this settlement is fair, reasonable, and the product of arm's length negotiations in mediation and before the magistrate. For these reasons and those set forth in further detail below, the settlement should be approved. Therefore, the parties respectfully request that this Court finds that the settlement amount is fair and reasonable.

5.1.  **Plaintiffs' Estimate of the Full Anticipated Recovery if Plaintiffs Had Received a Favorable Outcome at Trial**

Plaintiffs' Counsel calculates the highest possible damages for Plaintiffs as approximately $19,530.00 in unpaid wages and $4,363.16 in withheld tips, totaling $23,893.16 in lost wages and unpaid tips. In addition, Plaintiffs' total damages, including all unpaid wages, misappropriated tips, liquidated damages, statutory damages under the WTPA, and interest based on the allegations in the Complaint, amount to approximately $110,685.64, excluding attorney's fees and costs. [1]

However, it is important to note that this upper limit does not accurately reflect the realistic prospects of collecting that amount after a judgment is obtained, as the individual Defendants are Florida residents, and judgment collection from them is less favorable due to jurisdictional challenges.

Given these considerations, the settlement amount of $70,000.00 is fair and reasonable. This settlement represents approximately 185% recovery of Plaintiffs' lost wages, covers Plaintiffs' attorneys' fees and costs and offsets the risks of litigation, including the challenges of collecting a

---

[1] This amount does not include alleged emotional distress damages for retaliation, which would likely fall into the garden variety category. *See United States v. Asare,* 476 F. Supp. 3d 20, 37 (S.D.N.Y. 2020) (listing garden variety damages as $30,000 to $125,000).

judgment, and reflects the amount reached in settlement discussions with the magistrate and all parties involved.

### 5.2. <u>Bona Fide Disputes and Other Issues that Support Accepting the Settlement Agreement</u>

Defendants refute Plaintiffs' claims of unpaid wages and retaliation. Specifically, Defendants argue that Plaintiffs did not work the periods alleged and contend that there was no retaliation. Defendants also dispute the calculation of damages under the WTPA. If this litigation were to proceed and the Court or jury credited Defendants' testimony, then Plaintiffs' damages would be significantly reduced.

Another important factor in settlement negotiations was the avoidance of litigation burdens and expenses. If this case were to proceed, it would consume significant amounts of time and resources and demand substantial judicial resources. A trial would be costly for all Parties and could lead to the depletion of the resources used to resolve this matter.

Given the attendant risks of litigation, and the fact that the magistrate oversaw the settlement conference, the settlement represents a fair and reasonable resolution of this action.

### 5.3. <u>Description of Settlement Negotiations</u>

Counsel engaged in extensive arm's length and vigorous negotiations on behalf of the Parties. The Parties' attorneys are competent and experienced in wage and hour matters.

Settlement of this matter required significant expenditure of time and effort, including an unsuccessful mediation, exchange of document discovery, and a settlement conference with the magistrate. Ultimately, the parties reached a favorable settlement.

The extensive negotiations performed in this matter confirm that there was no collusion or fraud and that the Settlement Amount is the product of fair and reasonable negotiations.

### 5.4. <u>Amount of Plaintiffs' Attorney's Fees and the Basis for the Claimed Amount</u>

In accordance with the retainer agreement with Plaintiffs, Plaintiffs' counsel requests 33.3% of the total settlement amount before reimbursements of costs, which amounts to $23,333.33 in fees. As for costs, the costs of this action are itemized in the Attorney Bill, attached hereto as Exhibit C, amounting to $2,326.01 for the entirety of the case. See Exhibit C, Attorney Bill. This and the fee amounts to $25,659.34, an amount that is presumptively fair. *See Matter of Lawrence*, 24 N.Y.3d 320, 339 (2d Cir. 2014) ("absent incompetence, deception or overreaching, contingent fee agreements that are not void at the time of inception should be enforced as written."); *Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13-CV-6126 NGG VMS, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit"); *Karic v. Major Automotive Companies, Inc.*, 2016 WL 1745037 at *8 (E.D.N.Y. April 27, 2016)("Courts in this Circuit have often approved requests for attorneys' fees amounting to 33.3% of a settlement fund.")

Furthermore, as the proposed attorneys' fees are "consistent with a commonly approved percentage … the attorney's fee award is based on an agreement between Plaintiffs[s] and counsel,"

the fee should be approved as reasonable. *Alonso v. LE Bilboquet NY, LLC*, No. 16-CV-8448 (JMF), 2017 WL 445145, at *1 (S.D.N.Y. Feb. 1, 2017). The percentage method provides a powerful incentive to attorneys for Plaintiffs in contingency fee FLSA cases to obtain the highest possible settlement amount for their clients and to avoid unnecessary litigation in an effort to build up a lodestar. See *Hyun*, 2016 U.S. Dist. LEXIS 39115, *7 (S.D.N.Y. Mar. 24, 2016) ("the Court finds that the percentage method, which avoids the lodestar method's potential to 'create a disincentive to early settlement,' is appropriate") (quoting *McDaniel v. City of Schenectady*, 595 F.3d 411, 418 (2d Cir. 2010)).

If the lodestar method were to be used based on the billing shown in Exhibit C, courts generally "apply a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved." *Puciarelli v. Lakeview Cars, Inc.*, 2017 WL 2778029 at *2 (E.D.N.Y June 26, 2017.) The most common multiplier used by courts in this circuit is doubling the lodestar, which they have found to be reasonable for FLSA settlements. *See e.g. Hall v. Prosoure Techs.*, 2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016). As delineated in Exhibit C, Plaintiffs' Counsel has fees in the amount $26,680.00. By accepting 1/3 of the Settlement Sum and reimbursement of costs, Plaintiffs' counsel has effectively agreed to a reduction in hourly rates that would otherwise be fair and reasonable in a case of this nature. Our firm has worked on this matter without compensation of any kind to date and our fee has been wholly contingent upon the result achieved.

### 5.5. <u>Reasonableness of Fee Amounts</u>

Here, Plaintiffs' Counsel's fee request is reasonable in light of the success in settling this matter. The time expended was necessary to obtain the results achieved. "The hourly rates used in making a fee aware should be 'what a reasonable, paying client would be willing to pay.'" *Mills v. Cap. One, N.A.,* No. 14 CIV. 1937 HBP, 2015 WL 5730008, at *11 (S.D.N.Y. Sept. 30, 2015). "In determining a reasonable hourly rate, the court should not only consider the rates approved by other cases in the District but should also consider any evidence offered by the parties." *Farbotko v. Clinton Cty.*, 433 F.3d 204, 208-09 (2d. Cir. 2005). Unlike many other members of the FLSA Plaintiffs' Bar, Plaintiffs' Counsel regularly represents both employers and employees in wage and hour litigations. The firm's defense clients actually pay for the firm's legal services at each attorney's full hourly rate, which are the rates used to calculate the lodestar here. *Lora v. J.V. Car Wash, Ltd.,* No. 11CIV9010LLSAJP, 2015 WL 7302755 (S.D.N.Y. Nov. 18, 2015) ("ADK's requested rates are the amounts that [both attorneys] actually charge to their hourly-paying clients in other employment matters.").

### 5.6. <u>Plaintiffs' Counsel's Qualifications</u>

"To determine the quality of representation, courts review, among other things, the recovery obtained, and the backgrounds of the lawyers involved in the lawsuit." *Guzman v. Joesons Auto Parts*, No. 11 Civ. 4543, 2013 WL 2898154, at *3 (E.D.N.Y. June 13, 2013) (citations omitted). A court may take into consideration the quality of counsel's submissions to and work before the court, counsel's experience litigating other, similar cases, and whether counsel "achieved a reasonable recovery" for Plaintiffs. *Id.* (citations omitted).

Clifford Tucker, Esq., of Sacco & Fillas LLP has significant experience prosecuting, defending, and settling wage and hour actions and is well-versed in wage and hour law.

Clifford Tucker, Esq., is a trial attorney licensed in New York and New Jersey. He practices employment and personal injury law at the Law Office of Sacco & Fillas LLP and manages the employment law department. Mr. Tucker focuses on representing clients in matters related to minimum wage, overtime, spread-of-hours, the Wage Theft Protection Act, and retaliation under the federal Fair Labor Standards Act, New York Labor Law, and the implementing regulations of federal and state wage and hour laws. Additionally, he handles discrimination and harassment actions, has provided representation for civil servants in administrative proceedings, and defended employers at the New York Department of Labor and arbitrated contractor disputes. Mr. Tucker serves clients from various industries, including hospitality, construction, and civil service. His representation extends to the United States District Courts for the Southern and Eastern District of New York, the New York State Supreme Court, the New York State Division of Human Rights, the New York City Commission on Human Rights, the New York State Department of Labor, and administrative proceedings. Mr. Tucker also represents clients who have been injured in accidents such as construction injuries, motor vehicle accidents, pedestrian knockdowns, and premise cases involving slips, trips, and falls. Mr. Tucker has taught Continuing Legal Education classes on case preparation, investigation, negotiation, and discovery. Mr. Tucker also taught the "Basic Wage & Hour Rules: Spotting Red Flags" Continuing Legal Education class at the Injured Workers Bar Association 2024 Winter CLE. Clifford Tucker, Esq., also wrote and published "Introduction to the Federal and New York State Wage and Hour Laws" at the IWBA. *See Gonzalez v. Scalinatella, Inc.,* 112 F. Supp. 3d 5 (S.D.N.Y. 2015) ($450 per hour for a senior law firm attorney in FLSA type cases); *Yuquilema v. Manhattan's Hero Corp.,* No. 13-CV-461 WHP JLC, 2014 WL 4207106, at *14 (S.D.N.Y. Aug. 20, 2014), *report and recommendation adopted,* No. 13CV461, 2014 WL 5039428 (S.D.N.Y. Sept. 30, 2014) ("fee ranging from $250 to $450 is appropriate for experienced litigators in wage-and-hour cases"); *Almond v. PJ Far Rockaway, Inc.,* No. 1:15-CV-06792-FB-JO, 2018 WL 922184, at *2 (E.D.N.Y. Feb. 15, 2018) ("attorney's fees , like other goods and services, increase in cost with inflation").

Oscar Alvarado, Esq., was an associate at Sacco and Fillas LLP with four years of experience prosecuting and defending wage and hour actions and was well-versed in wage and hour law. Mr. Alvarado represented clients in matters related to minimum wage, overtime, the Wage Theft Protection Act, and retaliation under the federal Fair Labor Standards Act, New York Labor Law, and the implementing regulations of federal and state wage and hour laws. Additionally, he managed discrimination and harassment actions. Mr. Alvarado served clients from various industries, including hospitality, construction, and civil service. His representation extends to the United States District Courts for the Southern and Eastern District of New York, the New York State Supreme Court, the New York State Division of Human Rights, and the New York City Commission on Human Rights.

### 6.  Conclusion

For the foregoing reasons, the parties respectfully request that the Court grant the motion for approval. The settlement in this case is fair and reasonable and should be approved by the Court.

We thank the Court for the time and attention devoted to this matter.

Respectfully submitted,

By: _____/s/ Clifford Tucker_____
        Clifford Tucker, Esq.,